# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LINDALBETH LOPEZ HERNANDEZ,

                Petitioner,

      v.

LEANNA LUNDY, WARDEN OF THE CALIFORNIA CITY ICE PROCESSING CENTER, et al.,

               Respondents.

_____/

Case No. 1:25-cv-02007-SKO (HC)

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, DISMISSING PETITION WITHOUT PREJUDICE, AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE THE CASE**

**[Docs. 1, 2]**

    Petitioner Lindalbeth Lopez Hernandez is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the reasons detailed below, the motion for temporary restraining order will be DENIED, and the petition will be DISMISSED without prejudice.[1]

## BACKGROUND

    Petitioner is a native and citizen of Mexico who entered the United States without inspection on or about November 1999. (Doc. 10-1 at 2.[2]) On April 9, 2019, she was approved for a "U visa," which expired on April 8, 2023. (Doc. 10-1 at 2.)

---

[1] The parties consented to the jurisdiction of the Magistrate Judge, and on January 5, 2026, the case was assigned to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c). (Docs. 5, 8, 9.) Accordingly, the matter will be adjudicated by the undersigned.

[2] Docket citations are to ECF pagination.

On January 16, 2020, Petitioner was convicted in the San Benito County Superior Court of child abuse in violation of Cal. Penal Code § 273a(a), and was sentenced to two years in prison. (Doc. 10-1 at 2.) Petitioner then had three separate convictions for violation of probation, with the most recent conviction occurring on August 14, 2025. (Doc. 10-2 at 23, 25, 26.) On September 18, 2025, Petitioner was sentenced to a two-year term of imprisonment and her probation was terminated. (Id.)

On November 17, 2025, Petitioner was taken into Department of Homeland Security ("DHS") custody from the Central California Women's Facility where she had been serving her sentence. (Doc. 10-1 at 2.)

Respondent states Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1226(c) due to commission of certain criminal offenses. Although disputed by Petitioner, the record shows Petitioner is currently in removal proceedings before an Immigration Judge ("IJ").

Petitioner had a hearing before an IJ on December 2, 2025. (Doc. 13, referencing audio file lodged with the Court.) At the hearing, Petitioner stated she was represented by an attorney. (Id.) However, as the attorney had not yet submitted a notice of appearance, the hearing was continued. (Id.) At the hearing, Petitioner was notified she was scheduled for her next master calendar hearing on January 7, 2026. (Id.)

On December 27, 2025, Petitioner filed the instant petition and motion for temporary restraining order. (Docs. 1, 2.) Petitioner does not challenge that she is being held pursuant to 8 U.S.C. § 1226(c). She instead contends she is being indefinitely detained without access to an IJ or any scheduled hearing to test the legality of her detention. (Doc. 1 at 1.) She alleges she is being detained with no opportunity to be heard. (Doc. 1 at 2.)

Petitioner's claims are plainly without merit. Therefore, the Court will deny the motion for temporary restraining order and dismiss the petition without prejudice.

**DISCUSSION**

**A. Jurisdiction**

    1. Habeas corpus

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of

1  habeas corpus in which the petitioner asserts she is being held in custody "in violation of the
2  Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack
3  by a person in custody upon the legality of that custody, and that the traditional function of the
4  writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

5         Petitioner seeks immediate release from custody, which she contends violates the INA and
6  her constitutional due process rights. Thus, she properly invokes the Court's habeas jurisdiction.

7         2.   Judicial Review under the INA

8         The INA limits judicial review in many instances. Though 8 U.S.C. § 1252(g) precludes
9  this Court from exercising jurisdiction over the executive's decision to "commence proceedings,
10 adjudicate cases, or execute removal orders against any alien," this Court has habeas jurisdiction
11 over the issues raised here, namely the lawfulness of Petitioner's continued detention. Jennings v.
12 Rodriguez, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to
13 the three areas specifically outlined in the subsection).

14 **B.  Standard for Temporary Restraining Order**

15        The standard for issuing a temporary restraining order ("TRO") is the same as the standard
16 for issuing a preliminary injunction ("PI"). See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,
17 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders
18 and preliminary injunctions is "substantially identical"). When seeking a TRO or PI, a petitioner
19 must establish: (1) she is "likely to succeed on the merits" of her claims, (2) she is "likely to suffer
20 irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in
21 [her] favor" and (4) "an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc.,
22 555 U.S. 7, 20 (2008). The moving party has the burden to "make a showing on all four prongs"
23 of the Winter test to obtain a preliminary injunction. Alliance for the Wild Rockies v. Cottrell, 632
24 F.3d 1127, 1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." Mazurek
25 v. Armstrong, 520 U.S. 968, 972 (1997); Hecox v. Little, 104 F.4th 1061, 1073 (9th Cir. 2023).
26 "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural
27 Res. Def. Council, 555 U.S. 7, 24 (2008). Preliminary injunctions are intended to "merely to
28 preserve the relative positions of the parties until a trial on the merits can be held, and to balance

the equities at the litigation moves forward." <u>Lackey v. Stinnie</u>, 604 U.S. ___, 145 S. Ct. 659, 667 (2025) (citations omitted). The status quo refers to "the last uncontested status which preceded the pending controversy." <u>Tanner Motor Livery, Ltd. v. Avis, Inc.</u>, 316 F.2d 804, 809 (9th Cir. 1963) (quoting <u>Westinghouse Elec. Corp. v. Free Sewing Mach. Co.</u>, 256 F.2d 806, 808 (7th Cir. 1958)).

       1.   <u>Likelihood of Success on the Merits</u>

This first factor "is the most important" under <u>Winter</u>, and "is especially important when a plaintiff alleges a constitutional violation and injury." <u>Baird v. Bonta</u>, 81 F.4th 1036, 1041 (9th Cir. 2023). Here, the petition is premised on Petitioner's assertion that she has been detained without any access to an IJ or any scheduled hearing. She claims her detention is therefore unconstitutional, and the Court should order her immediate release.

The contention is simply wrong. As previously noted, Petitioner was taken into custody due to her conviction of child abuse. She was provided a hearing before an IJ on December 2, 2025, and a subsequent hearing was scheduled for January 7, 2026. Petitioner claims that no hearing dates were reflected on the automated case information maintained by DHS. Respondent states the electronic automated cases information was erroneous and has been corrected. The Court has verified that the automated case information reflects that Petitioner's next master hearing is set for February 24, 2026. See https://acis.eoir.justice.gov/en/caseInformation (search conducted using Petitioner's A-number) (last visited January 12, 2026). Regardless, it is clear from the record that Petitioner's assertion she is being detained without a hearing before an IJ is false. Moreover, Petitioner's detention pursuant to § 1226(c) is statutorily mandated.

Title 8 U.S.C. § 1226(c) provides in relevant part:

(c) Detention of criminal aliens

(1) Custody

    The Attorney General shall take into custody any alien who--

    (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

    (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

    (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense

4

for which the alien has been sentence1 to a term of imprisonment of at least 1 year,

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

(E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

. . . .

(4) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C.A. § 1226 (West).

Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." As noted above, Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other

conditions." Id. at 304. Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226(c) mandates detention. Nevertheless, Petitioner maintains that her claim is not defeated, because she is making an "as applied" challenge to her detention, and she contends her detention is indefinite.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

It is undisputed that Petitioner's detention is mandatory under § 1226(c), and she does not meet any of the conditions for release pursuant to § 1226(c)(2). Nevertheless, she claims her detention is indefinite. The Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as-applied challenge to 8 U.S.C. § 1226(c); however, the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as-applied challenge under the Due Process Clause.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is materially different from the present case. In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690. The civil confinement at issue was not

1   limited, "but potentially permanent." Id. at 691. The Court observed that where "detention's goal

2   is no longer practically attainable, detention no longer bears a reasonable relation to the purpose

3   for which the individual was committed." Id. (internal quotation marks and citation omitted).

4   Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-

5   period detention, unlike detention pending a determination of removability, has no obvious

6   termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme

7   Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the

8   conclusion of removal proceedings." Jennings, 583 U.S. at 304.

9       In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the

10  Immigration and Nationality Act ("INA"), complaining that his six-month detention violated due

11  process because he had not been provided an individualized bond hearing. 538 U.S. 510. The

12  Supreme Court rejected this claim, observing first that Congress, in its "broad power over

13  naturalization and immigration proceedings," "regularly makes rules that would be unacceptable

14  if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80

15  (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing

16  aliens from fleeing prior to or during removal proceedings. Id. at 527-28. Also, the Court noted

17  that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme

18  Court did not specify an outer limit as to what constitutes a permissible detention period, it

19  acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the

20  vast majority of cases ... and about five months in the minority of cases in which the alien chooses

21  to appeal." Id. at 530. Nevertheless, the majority went on to hold that six months did not run afoul

22  of the due process clause in part because the delayed proceedings were the result of the alien's

23  own requests. Id. at 530–31.

24      Numerous district courts, including this Court, have found that unreasonably long detention

25  periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909

26  F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows

27  for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland

28  Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years

1    without further inquiry into whether it was necessary to ensure his appearance at the removal

2    proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a

3    violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir.

4    2020) (reversing and remanding to district court to order bond hearing while detained under §

5    1226(c)); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025)

6    (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v.

7    Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond

8    hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

9    Here, however, Petitioner has been detained less than two months. This is a reasonable

10    amount of time. The record reflects Petitioner's case is proceeding in a routine fashion: after her

11    detention on November 17, 2025, she attended two master calendar hearings, and her next hearing

12    is scheduled for February 24, 2026. The Court does not find Petitioner's detention to be indefinite.

13    Moreover, Petitioner states she is not even seeking bond release, but outright release. (Doc. 11 at

14    2.)  Petitioner offers no authority for her claim. Indeed, as noted above, detention is statutorily

15    mandated. Petitioner's claim is essentially a facial challenge to the statute, but as discussed above,

16    a facial challenge to § 1226(c) was rejected by the Supreme Court. See Jennings, 583 U.S. 281.

17    In an attempt to save her petition, Petitioner alleges the conditions of her confinement violate

18    due process such that immediate release is warranted. She contends that because "continued

19    detention is no longer reasonably related to any legitimate civil purpose, emergency injunctive

20    relief is warranted." (Doc. 11 at 1-2.) She contends detention "has become arbitrary and punitive

21    in effect." (Doc. 11 at 2.) The contentions are without any merit. Petitioner is being detained under

22    § 1226(c) pending removal proceedings. Clearly, detention mandated under § 1226(c) pending

23    removal proceedings is not arbitrary or punitive but has a legitimate purpose: "preventing aliens

24    from fleeing prior to or during removal proceedings." Demore, 538 U.S. at 527-28. Petitioner's

25    as-applied challenge fails because there is no evidence that her detention is illegitimate or

26    unreasonably prolonged.

27    Petitioner also contends that her medical conditions warrant emergency relief. She claims

28    she suffers from hypertension, sleep apnea, depression and vertigo/dizziness. (Doc. 1 at 3-4.) The

8

claims are unsubstantiated, and in any case, do not rise to a level requiring extraordinary relief.[3] Her complaints are common among many detainees, and they do not present a dire medical emergency. Moreover, courts have generally considered the punitive conditions of a detainee's confinement only when coupled with a prolonged period of confinement. See, e.g., German Santos v. Warden Pike, 964 F.3d 203, 211 (3d Cir. 2020); Doe v. Chestnut, 2025 WL 3240400 (E.D. Cal. November 20, 2025); Armando C. G. v. Tsoukaris, 2020 WL 4218429 (D.N.J. July 23, 2020). Exceptions have been made for the extraordinary circumstances presented by the COVID-19 pandemic. See, e.g., Sarr v. Scott, 765 F.Supp.3d 1091, 1104 (W.D. Wash. February 4, 2025); Vasquez Barrera v. Wolf, 455 F.Supp.3d 330 (S.D. Tex. April 17, 2020). However, Petitioner's complaints do not rise to such a level.

Complaints solely bearing on the conditions of confinement should be raised in a civil rights action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The Supreme Court has not resolved the question of whether a conditions of confinement claim may be brought in the form of a habeas petition. See Bell v. Wolfish, 411 U.S. 520, 526 n.6, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself.") In addition, the Ninth Circuit has not decided the issue. See Nettles v. Grounds, 830 F.3d 922, 931 (9th Cir. 2016) (holding that if a state prisoner's claim "would not necessarily spell speedier release," it does not lie at "the core of habeas corpus," and must be brought, if at all, under 42 U.S.C. § 1983; but explicitly stating that the Ninth Circuit would not address how this standard "applies to relief sought by prisoners in federal custody"). Thus, Petitioner's standalone claim regarding the conditions of her confinement should be raised in a Bivens action.

For the foregoing reasons, Petitioner fails to satisfy the first Winter factor. The Court does not reach the remaining factors, as it is clear Petitioner cannot succeed on her claims. The motion

---

[3] Petitioner cites to Zepeda Rivas v. Jennings, No. 1:20-cv-02731-JLT, 2020 WL 2537748, at 6 (E.D. Cal. May 18, 2020), arguing that "Courts in this District have granted emergency relief on similar showings." (Doc. 11 at 3.) No such case exists. The Court is aware that other filings by the attorney of record in this case suffer from similar non-existent case citations. Insofar as the matter is being addressed by Judge Chi Soo Kim in a separate case, the Court will not delve further in the present case.

1    for TRO must be denied.

2    **C.  Merits of Petition**

3      The Court finds no merit to Petitioner's claims. As previously discussed, Petitioner is

4    properly detained pursuant to 8 U.S.C. § 1226(c). The bases for her claims:  (1) no Immigration

5    Judge has been assigned to her case (Doc. 1 at 1); (2) no hearings have been held (Doc. 1 at 3); (3)

6    no future hearings are scheduled (Doc. 1 at 1, 3); and (4) there is no timeline for review (Doc. 1 at

7    3), are refuted by the record.

8      As to Petitioner's claim that her detention is indefinite, the Court finds her less-than-2-month

9    detention to be entirely reasonable and well within the typical timeline noted by the Supreme Court

10   in Demore, 538 U.S. at 530. She is currently in removal proceedings, and she has been provided

11   two master calendar hearings to date, with the next one set for next month. The petition will

12   therefore be dismissed. However, dismissal will be without prejudice to any future filing should

13   Petitioner's detention prove to be unreasonably prolonged. See Zadvydas v. Davis, 533 U.S. 678

14   (2001).

15                         **ORDER**

16     For the foregoing reasons, IT IS HEREBY ORDERED:

17     1)  Petitioner's motion for temporary restraining order (Doc. 2) is DENIED;

18     2)  The petition for writ of habeas corpus is DISMISSED without prejudice; and

19     3)  The Clerk of Court is directed to enter judgment and close the case.

20

21   IT IS SO ORDERED.

22   Dated:   **January 14, 2026**      /s/ *Sheila K. Oberto*

23                 UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28